# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JORGE OSWALDO AQUINO MARTINEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOBIS ALABAMA, LLC d/b/a HYUNDAI MOBIS, GB2G, INC. d/b/a ALLSWELL, and SPJ CONNECT,<br><br>Defendants. | CIVIL ACTION FILE NO.:<br><br>Complaint - Class Action<br><br>JURY DEMAND |

## CLASS ACTION COMPLAINT

Plaintiff Jorge Oswaldo Aquino Martinez ("Plaintiff"), a Mexican national and resident of the State of Alabama, files this Class Action Complaint for damages and equitable relief against Mobis Alabama, LLC d/b/a Hyundai Mobis ("Hyundai Mobis"), GB2G, Inc. d/b/a Allswell ("Allswell"), and SPJ Connect, (collectively referred to as "Defendants"), individually and on behalf of other similarly situated employees of Defendants, showing the Court as follows:

## NATURE OF THE CASE

1. This is a class action lawsuit brought by Plaintiff, individually and on behalf of a putative class of other employees employed by Defendants. Plaintiff was

1

induced to move to the United States by Defendants Allswell and SPJ Connect with false promises of a skilled job working for Defendant Hyundai Mobis as an engineer or "technologist." However, upon arriving in the U.S. and beginning his job at the Kia Motors facility located in West Point, Georgia, Plaintiff was relegated to performing assembly-line work, subjected to six twelve-hour workdays per week with mandatory overtime while American-born workers were not, and paid half of what American-born workers earned for the same job in the same location.

2. As a result of Defendants' policies, patterns, and practices, Plaintiff and similarly situated employees were and are paid much less than their American-born and non-Hispanic counterparts, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

3. Plaintiff seeks to certify this action as a class action on behalf of a class of similarly situated employees who were not born in the U.S., and seeks, for himself and on behalf of the class, all lost wages and other economic benefits of employment, compensatory and punitive damages, liquidated damages, and other relief available at law or in equity.

## THE PARTIES

7.      Plaintiff is a resident of the State of Alabama and works in the City of West Point, located in Troup County, Georgia.

8.      Plaintiff is a citizen of Mexico and a Hispanic person of Mexican ancestry and national origin.

9.      Plaintiff came to the U.S. on a TN Visa in July 2022 to work for Defendants.

10.     Plaintiff and other similarly situated workers are not white, not American, and Hispanic and of Mexican ancestry and national origin.

11.     At all relevant times, Plaintiff and other similarly situated workers have been and/or were employees of Defendants within the meaning of Title VII.

12.     At all relevant times, Plaintiff and other similarly situated employees have been and/or were parties to a contract of employment under 42 U.S.C. § 1981.

13.     Allswell is a limited liability company with its principal place of business at 124 Big Horn Drive, Newnan, Georgia 30265.

14.     At all relevant times, Defendant Allswell was an employer of Plaintiff and other similarly situated workers within the meaning of Title VII.

15.     SPJ Connect is a Georgia limited liability company with its principal place of business at 124 Big Horn Drive, Newnan, Georgia 30265.

16. At all relevant times, Defendant SPJ Connect was an employer of Plaintiff and other similarly situated workers within the meaning of Title VII.

17. Mobis Alabama is a Georgia limited liability company with its registered agent in Cobb County, Georgia.

18. At all relevant times, Defendant Mobis Alabama was an employer of Plaintiff and other similarly situated workers within the meaning of Title VII.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331 and § 1332.

20. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c), as well as 42 U.S.C. § 2000e–5(f)(3).

## ADMINISTRATIVE EXHAUSTION

21. On August 11, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII against Defendants on behalf of himself and those similarly situated.

22. As of the date of this filing, Plaintiff has requested issuance of the Notice of Right to Sue from the EEOC, and, promptly upon receipt, will seek leave to amend this Complaint to confirm the same.

23. Members of the putative class who may not have filed charges of discrimination against Defendants with the EEOC will be entitled to rely upon the single-filing rule set forth in *Calloway v. Partners Nat'l Health Plans*, 986 F. 2d 446 (11th Cir. 1993).

## STATEMENT OF FACTS

### *Mr. Martinez and the Putative Class*

24. Mr. Martinez was born and raised in Mexico, and is a citizen of Mexico.

25. Mr. Martinez is a skilled technician and engineer.

26. In Mexico, he attended Universidad Tecnologica de Tijuana to become an engineer with an emphasis in mechatronics.

27. For the last five years, Mr. Martinez has worked in Mexico as an electromechanics technician and quality engineer.

28. In early 2022, Mr. Martinez saw a job posting at his university from Defendants SPJ Connect and Allswell which advertised job opportunities in the U.S.

29. Defendants SPJ Connect and Allswell advertised job opportunities with Hyundai Mobis at multiple universities and other places in Mexico.

30. Defendants SPJ Connect and Allswell promote their services on Facebook and claim they can help workers "fulfill [their] dream of working legally in the United States."

31. The services provided by SPJ Connect and Allswell include assisting Mexican nationals with the preparation and submission of applications to the United States Citizenship and Immigration Service for TN Visa status in order to gain authorization for those individuals to come to the U.S. and work for Allswell and Hyundai Mobis.

32. SPJ Connect and Allswell became joint employers of at least 100 Mexican nationals to the U.S. working Hyundai Mobis in West Point, Georgia, through their coordinated effort as described above.

### *The TN Visa Program*

33. The United States-Mexico-Canada Agreement (USMCA), formerly the North American Free Trade Agreement (NAFTA), established a non-immigrant visa status that enables Canadian and Mexican citizens to work in the United States legally. *See* 8 U.S.C. § 1184(e).

34. Also known as the "TN" Visa, this status is available to citizens of Canada or Mexico who seek temporary entry into the United States "as a business person to engage in business activities at a professional level." 8 C.F.R. § 214.6(a).

35. As defined by the regulations of the Department of Justice, "business activities at a professional level" means "those undertakings which require that, for successful completion, the individual has at least a baccalaureate degree or

appropriate credentials demonstrating status as a professional" in a profession indicated Appendix 2 to Annex 16-A of the USMCA. *Id.* at § 214.6(b).

### *Defendants' Fraudulent Scheme*

36. SPJ Connect is a labor recruiter based in Hogansville, Georgia and with offices in Mexico.

37. SPJ Connect served as the first point of contact for Plaintiff and other similarly situated employees in Mexico.

38. SPJ Connect regularly advertises new job vacancies from its affiliated company Allswell.

39. On LinkedIn, SPJ Connect promotes itself as being a "trilingual law firm that assists US companies recruit to highly skilled workers via the TN Visa Process."

40. SPJ Connect also claims its "goal is to help [their] US clients save time and money by providing all the support needed to get a TN Visa Approval for all of their candidates."

41. SPJ Connect executive Yadira Leos stated that the company has roughly 500 vacancies to fill every month.

42. Mr. Martinez applied for the engineering job in hopes of being able to come to the United States to expand his skills and earn a better living.

43. After applying, SPJ Connect coordinated Mr. Martinez's employment with Allswell by providing information and support on his behalf to the United States Consulate in Mexico to obtain a TN Visa.

44. Allswell is a Georgia-based staffing agency that has a contract with Hyundai Mobis to provide workers at its plants.

45. SPJ Connect and Allswell share the same registered agent address, which is a residential home in Newnan, Georgia.

46. Youngjin Lee is listed as the CEO for SPJ Connect and as the secretary for Allswell on the Georgia Secretary of State's Corporation Division website.

47. In an effort to get Mr. Martinez a TN Visa so he could come to work in the United States, SPJ Connect prepared a TN Visa support letter dated May 16, 2022, which was addressed to the United States Consulate in Mexico and was on Allswell letterhead, signed by Allswell's Vice President Seungbae Park.

48. The support letter outlined, among other things, that Allswell "requires a Scientific Technician/Technologist in the Production services division."

49. Allswell's letter to the consulate stated that in order to qualify for this professional position, a person needs to have "(a) theoretical knowledge of any of the following disciplines: agricultural sciences, astronomy, biology, chemistry, engineering, forestry, geology, geophysics, meteorology, or physics; and (b) the

8

ability to solve practical problems in any of those disciplines, or the ability to apply principles of any of those disciplines to basic or applied research."

50. Allswell's letter further explained that Mr. Martinez was qualified for the TN Visa as a scientific technician/technologist because he met the qualifications describe above at paragraph 49.

51. Allswell further detailed that Mr. Martinez would be responsible for providing some of the following technical services if he secured the job at the Kia Motors manufacturing facility in West Point:

- Setup the production equipment and supplies before executing the job orders.
- Operate and maintain machinery, ensure production standards are met, finalize products.
- Operate equipment safely and effectively for production processing.
- Ensure that equipment are maintained in good and safe working condition.
- Inspect equipment to identify any replacements, malfunctions and repairs.
- Perform regular equipment maintenance to ensure production capacity and quality.
- Provide assistance to junior operators in their assigned responsibilities.
- Repair and clean the equipment when needed.
- Work under the guidance of Supervisor to perform and complete the assigned duties in timely manner.
- Evaluate equipment performance and recommend improvements.
- Follow safety procedures and company policies for equipment operation.
- Recommend process improvements to enhance operational efficiency and safety.
- Contribute to waste management programs.
- Identify and report unsafe operations to Supervisor immediately.
- Maintain the work area clean, safe and organized.

52. Allswell further offered to hire Plaintiff to work in the United States for a temporary period of 3 years.

53. Allswell offered Plaintiff a position paying $11 per hour.

54. In or around July 2022, Mr. Martinez obtained a TN Visa to work on a temporary basis in the United States at Hyundai Mobis in West Point, Georgia.

55. In early July, Mr. Martinez and other workers who were granted TN Visas to work in the United States were subsequently contacted by Katia Garcia, from the "logistics department" at SPJ Connect, via Whatsapp, congratulating them for having a TN Visa and advising them about their travel date to Atlanta of July 12.

56. In reliance on the promises made by SPJ Connect and Allswell concerning the job promised to him and his eligibility for that job under U.S. law, Mr. Martinez moved from Mexico to the United States.

57. On or around July 13, Mr. Martinez started working for Hyunda Mobis at the Kia Motors manufacturing facility in West Point.

58. Defendants require Mr. Martinez to work overnight shifts, from 6:00 p.m. to 6:00 a.m.

59. Mr. Martinez is required to work overtime as he works 12 hours days, and alternates between working a five day workweek, and then a six day workweek.

60. Mr. Martinez performs none of the technical services that he was told by Defendants SPJ Connect and Allswell that he would perform.

61. Mr. Martin works on the production line performing manual labor, and helping to install about 400-500 dashboards into cars each day at work.

62. He spends all of his days using his hands, and as a result, he suffers pain and numbness in his hands.

63. Other employees of Defendants who are not white and not American, and who are Hispanic and of Mexican ancestry and national origin, likewise do not perform technical work but instead perform manual labor like Mr. Martinez.

64. Mr. Martinez earns substantially less per hour than white and American employees of Defendants.

65. Other employees who are not white and not American, and who are Hispanic and of Mexican ancestry and national origin, are paid significantly more per hour than Plaintiff is for the same or similar work.

66. White and American employees of Defendants are not required to work more than 40 hours per week when performing the same or a similar job.

67. Other employees who are not white and not American, and who are Hispanic and of Mexican ancestry and national origin, are required to work more than 40 hours per week.

68. Defendants Hyundai Mobis, Allswell, and SPJ Connect have a pattern and practice of paying American-born employees and/or employees who are not of Mexican ancestry and national origin higher wages than employees who are not American and/or are of Mexican ancestry or national origin.

## CLASS ACTION ALLEGATIONS

69. Plaintiff brings this lawsuit as a class action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

70. Plaintiff asserts claims for violation of Title VII and 42 U.S.C. § 1981 on behalf of a class (hereafter the "Class") defined as follows:

> All persons who are not white and not American who, at any time during the period August 11, 2018 through the entry of any class certification order, were employed by SPJ Connect and/or Allswell and/or Hyundai Mobis to perform work at the Hyundai Mobis plant.

71. Excluded from the Class are all officers and employees of Defendants and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

72. The amount in controversy exceeds $5,000,000 based on the large number of individuals with thousands of dollars in lost wages each, as well as uncapped compensatory and punitive damages under 42 U.S.C. § 1981.

### *Fed. R. Civ. P. 23(a) Allegations*

73. **Numerosity.** Class Members are believed to exceed 100 and are so numerous and that separate joinder of each is impracticable.

74. **Ascertainability.** The Class Members are ascertainable and readily identifiable from Defendants' information and data.

75. **Commonality.** Common questions of law and fact predominate, which are susceptible to common answers, including:

   a. Whether Class Members were subjected to an unlawful common policy and practice of being subjected to disparate terms and conditions of employment as compared with Defendants' white and American employees, including being required to work overtime hours and being paid less for the same work, in violation of Title VII and/or 42 U.S.C. § 1981; and

   b. Whether Defendants violated Title VII and/or 42 U.S.C. § 1981 intentionally and/or knowingly so as to render the award of punitive damages appropriate in this case.

76. **Typicality.** Plaintiff's claims and defenses are typical of the claims of all Class Members. The systemic racial and national origin discrimination challenged in this Complaint has affected, and continues to affect, the named Plaintiff and the class he seeks to represent as they have all been paid less, and have been forced to work more, than their counterparts who are American, not Hispanic, and not of Mexican ancestry or national origin. Plaintiff suffered the same harm as all Class Members: damages for disparate pay.

77. **Adequacy.** Plaintiff is an adequate class representative because his interests do not conflict with Class Members' interests, and he will fairly and adequately protect those interests. Plaintiff's counsel are experienced in litigating employment discrimination matters, class actions, and complex litigation.

### *Fed. R. Civ. P. 23(b)(3) Allegations*

78. Plaintiff's claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(3).

79. Questions of law and fact, including the common questions identified above, predominate over any questions only affecting individual Class Members.

80. A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute.

81. The costs of proving Defendants' pattern and practice of immigration fraud and discrimination makes it impracticable for the named Plaintiff and members of the proposed class to control the prosecution of their claims individually.

82. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff's counsel are unaware of any likely difficulties in managing this class action.

83. It is desirable to concentrate the litigation of these claims in this forum because Defendants transact business here, Plaintiff works here, the great majority of Class Members reside or work in Georgia, and substantial evidence relating to this class action is located in this district and division.

84. Plaintiff is unaware of other pending litigation on behalf of Class Members involving these claims against Defendants.

## COUNT I
## Violations of Title VII

85. Plaintiff realleges and incorporates all preceding paragraphs as if set forth fully herein.

86. Plaintiff and the Class Members are members of protected classes in that they are non-white Hispanic or Latino, and are of Mexican national origin.

87. Plaintiff and the Class Members were subjected to disparate treatment and discrimination on the basis of their race, non-white Hispanic or Latino, and/or their national origin, Mexican, including, but not limited to, being paid less for performing the same work as white and American employees of Defendants and being forced to work overtime and more hours per week than those white and American employees.

88. The above-pled discriminatory conduct toward Plaintiff and the Class Members constitutes race and national origin discrimination against them in violation of Title VII, 42 U.S.C. § 2000e et seq.

89. Defendants acted in bad faith, willfully and wantonly disregarded the rights of Plaintiff and the Class Members under Title VII, and acted in reckless disregard of their rights under Title VII.

90. As a result of Defendants' discriminatory conduct, Plaintiff and the Class Members have suffered lost compensation and other economic benefits of employment, pain and suffering as a result of emotional distress, inconvenience, humiliation, and other indignities.

91. Pursuant to Title VII, Plaintiff and the Class Members are entitled to damages, including back pay and lost benefits, promotion to a higher rate of pay, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT II
### Violations of 42 U.S.C. § 1981

92. Plaintiffs and the Class Members reallege and incorporate all preceding paragraphs as if set forth fully herein.

93. Plaintiff and the Class Members were at all times relevant to this Complaint, parties to contracts, including contracts for the performance of work, in

which Plaintiff and the Class Members were compensated by Defendants for work.

94. Plaintiff and the Class Members performed their contractual obligations.

95. Plaintiff and the Class Members are Hispanic or Latino and of Hispanic or Latino ancestry.

96. Plaintiff and the Class Members were subjected to disparate treatment and discrimination on the basis of their race, non-white Hispanic or Latino, and/or their national origin, Mexican, including, but not limited to, being paid less for performing the same work as white and American employees of Defendants and being forced to work overtime and more hours per week than those white and American employees.

97. The above-pled discriminatory conduct toward Plaintiff and the Class Members constitutes unlawful race discrimination against them in violation of 42 U.S.C. § 1981.

98. Defendants undertook their conduct intentionally and maliciously with respect to Plaintiff and the Class Members and their federally protected rights, or additionally, and in the alternative, undertook their conduct recklessly with respect to the Plaintiff and the Class Members and their federally protected rights, entitling them to recover punitive damages against Defendants.

99. As a direct and proximate result of Defendants' unlawful actions, Plaintiff and the Class Members have suffered lost compensation and other benefits of employment, pain and suffering in the form of emotional distress, inconvenience, humiliation, and other indignities.

100. Plaintiff and the Class Members are entitled to damages, including back pay and lost benefits, promotion or a higher rate of pay, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks judgment as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

b) For a declaration that Defendants have violated Title VII and 42 U.S.C. § 1981;

c) For an award of lost wages and economic damages according to proof;

c) For an award of compensatory damages;

d) For an award of punitive damages;

e)      For prejudgment and post judgment interest on any amounts awarded;

f)      For injunctive relief against continued violations; and

g)      For such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

This 11th day of August, 2022.

> */s/ Rachel Berlin Benjamin*
> Rachel Berlin Benjamin
> Georgia Bar No. 707419
> Brian J. Sutherland
> Georgia Bar No. 105408
> Christopher B. Hall
> Georgia Bar No. 318380
> HALL & LAMPROS, LLP
> 400 Galleria Parkway, Suite 1150
> Atlanta, GA 30339
> Telephone: (404) 876-8100
> Facsimile: (404) 876-3477
> rachel@hallandlampros.com
> brian@hallandlampros.com
> chall@hallandlampros.com
>
> *Attorneys for Plaintiff*